■ GEORGE T. BRADY, Individually and as Father of JESSE BRADY, an Infant, Respondent, et al., Plaintiffs, v COUNTY OF TIOGA et al., Appellants. — Appeal from an order of the Supreme Court at Special Term (Smyk, J.), entered May 23, 1983 in Tioga County, which, *inter alia,* partially granted defendants' motion for summary judgment. ¶ On October 24, 1979, the infant Jesse Brady, then age two, was removed from the custody of his father by the Tioga County Department of Social Services and placed into foster care when a caseworker concluded, after an examination of the residence and the infant's physical condition, that the infant was being abused by being exposed to filthy and unhealthy conditions. Defendant Raymond Van Stone was the caseworker in the employ of the department in charge of the case. The removal took place without the written consent of the father. Two days later the father signed a voluntary transfer agreement, ostensibly pursuant to section 384-a of the Social Services Law, vesting temporary custody of Jesse with the department. ¶ Three days later the father revoked his voluntary surrender by phone and demanded return of Jesse. On November 15, 1979, the Commissioner of the Tioga County Department of Social Services petitioned Family Court pursuant to section 358-a of the Social Services Law for an order transferring custody of Jesse to the department. Following a hearing in Family Court on November 21, 1979, Jesse was placed in the temporary custody of the department.

¶ Jesse's father commenced this action on his own behalf and on behalf of Jesse alleging that the removal and continued custody of the infant with the department was unlawful, that it violated their civil rights under Federal law (US Code, tit 42, § 1983) (hereafter section 1983), and that it constituted assault and battery, false imprisonment, trespass, abuse of process, negligence, and/or willful violation of the Social Services Law and the Family Court Act. ¶ Defendants moved for summary judgment dismissing the complaint in its entirety. Special Term refused to dismiss the complete complaint but severely limited the issues for trial by dismissing a large part of it. For purposes of clarity, it should be explained that the complaint of plaintiffs Dora Brady and Thomas E. Brady, the grandparents of Jesse, was dismissed in its entirety. Because that portion of the order is not being contested on this appeal, those plaintiffs are no longer parties to the action. ¶ It is difficult to approach the issues involved by following, point by point, the organizational structure of the appeal. Our analysis of the decision appealed from is that Special Term made the absolute determination that no cause of action exists for the original removal of the child from his father's custody. Neither plaintiff nor defendants contest that portion of the decision. Special Term made a multitude of other determinations in regard to the pleadings in favor of defendants which are not contested in this appeal. But defendants do contest that portion of the decision which held that triable issues of fact exist which were created by the father's complaint as to their conduct during the period of time beginning immediately after the removal and continuing until the date of Family Court's decision granting temporary custody to the department. ¶ In its written decision, Special Term stated that "there are triable issues of fact as to the circumstances of the execution of [the] surrender agreement, the effectiveness of the father's attempt to revoke the voluntary surrender, and the propriety of the defendants' retention of the child until November 21, 1979". On the basis of the various contentions and the lack of conclusive evidence supporting either side, we agree that there are triable issues of fact to be resolved by plenary trial (*Phillips v Kantor & Co.,* 31 NY2d 307, 311; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404). ¶ We also consider this to be the pivotal point upon which all other issues raised by the appeal will depend. If, at the trial, the factual evidence should establish the validity of the surrender agreement and substantial compliance with sections 384-a and 358-a of the Social Services Law, defendants' argument that plaintiff suffered no constitutional deprivation would be sustained. The State may interfere with a parent's custodial rights if due process protections are observed (*Duschesne v Sugarman,* 566 F2d 817, 824-825). Such a finding would probably defeat all other causes of action alleged in the complaint. ¶ On the other hand, the trial court could determine that the surrender agreement was a complete nullity or that it had been revoked with an effect different from that claimed by defendants. In either of those events, the issue of due process rights necessarily would be determined in a different manner. Such a decision would then be based upon the statutory procedural requirements established by sections 1022, 1023, 1024, 1026, 1027 and 1028 of the Family Court Act, and any other statutory requirement applicable to involuntary surrender. ¶ In like manner, defendants' argument that they are entitled to absolute immunity as public officials, or at least qualified immunity, must abide the event. Should the decision of the trial court be that due process rights were denied, it would be necessary to determine the nature of the wrongdoing. When official action involves the exercise of discretion, the officer is not liable for the injurious consequences of that action. On the other hand, if the action is exclusively ministerial, the officer will be liable if it is otherwise tortious and not justifiable to statutory command. "[D]iscretionary or quasi-judicial acts in-

volve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result" (*Tango v Tulevech*, 61 NY2d 34, 41). ¶ Special Term concluded that the original removal of the child had been determined by Family Court to have been proper. That issue was eliminated from the action. Defendants contend that Special Term should have ruled that its defense of *res judicata* was a complete bar to all causes of action. We disagree. Special Term, upon the limited evidence submitted, would have been unjustified in granting defendants complete summary judgment on that defense. ¶ Defendants raise an issue on this appeal, apparently for the first time, that the section 1983 cause of action (seventh cause of action) should be dismissed against the county and the commissioner. The doctrine of *respondeat superior* is unavailable in section 1983 actions against a municipality (*Leonhard v United States*, 633 F2d 599, 623, cert den 451 US 908). Rather, there must be some direct, affirmative culpability on the part of the municipality (*Monell v New York City Dept. of Social Servs.*, 436 US 658, 695). The allegations of the complaint herein are extremely broad and attribute all wrongdoing to all defendants. No bill of particulars which could have specified the actual misconduct on the part of each defendant was included in the record. The supporting affidavits submitted by defendants at Special Term do not appear to raise the issue. Consequently, there was no obligation on the part of plaintiff to offer proof of culpable conduct. Under the circumstances, we should not entertain an issue which was not raised at Special Term (*Charlotte Lake Riv. Assoc. v American Ins. Co.*, 68 AD2d 151, 154-155). ¶ We have considered all other contentions made by defendants and have found them to be without merit. ¶ Order affirmed, without costs. Mahoney, P. J., Casey, Mikoll, Levine and Harvey, JJ., concur.