[887 NYS2d 298]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HIGH-GATE LTC MANAGEMENT, LLC, Appellant.

Third Department, October 22, 2009

**APPEARANCES OF COUNSEL**

*Geiger & Rothenberg, L.L.P.*, Rochester (*David Rothenberg* of counsel), for appellant.

*Andrew M. Cuomo, Attorney General*, New York City (*Hannah Stith Long* of counsel), for respondent.

**OPINION OF THE COURT**

Mercure, J.

Defendant, a limited liability company, operated Northwoods Rehabilitation and Extended Care Facility in Cortland County at all relevant times. Following a 2005 investigation into the care of a Northwoods patient who was in a persistent vegetative condition, five of defendant's employees were convicted of various crimes relating to their failure to provide required care to that patient, despite stating in facility records that such care had been provided. Defendant was subsequently charged in an indictment with six counts of willful violation of health laws and three counts of falsifying business records in the second degree, arising out of its employees' treatment of the patient.[1] Following a jury trial, defendant was convicted as charged, sentenced to a one-year conditional discharge prohibiting it

---

1. The patient died of unrelated causes in March 2005.

from operating nursing homes in New York, and fined $15,000. Defendant appeals, and we now affirm.

We reject defendant's argument that a limited liability company cannot be held criminally liable for the acts of its employees committed within the scope of their employment. Defendant does not dispute that its employees were acting within the scope of their employment and on its behalf, or that it was aware of chronic understaffing resulting in deficiencies in care. Nor does it dispute that it may be convicted of a crime. Nevertheless, defendant maintains that the doctrine of respondeat superior is not applicable when, as herein, intent is an element of the charged crimes (*see* Public Health Law § 12-b [2]; Penal Law § 175.05 [1]). Moreover, although defendant concedes that Penal Law § 20.20 (2) essentially renders that doctrine applicable to corporations for certain intentional crimes, it maintains that the statute deviates from common law and must be strictly construed such that the rule contained therein cannot apply to limited liability companies, as unincorporated associations.

A limited liability company is statutorily defined as "an unincorporated organization of one or more persons having limited liability for the contractual obligations and other liabilities of the business . . . , other than a partnership or trust" (Limited Liability Company Law § 102 [m]). It is a hybrid entity, combining the corporate limitation on personal liability with the operating and management flexibility of a partnership (*see* Rich, Practice Commentaries, McKinney's Cons Laws of NY, Book 32A, Limited Liability Company Law, 2009 Pocket Part, at 23; *see also Hotel 71 Mezz Lender LLC v Falor*, 58 AD3d 270, 274 [2008], *revd on other grounds* 14 NY3d —, 2010 NY Slip Op 01348 [2010]). Like a corporation, a limited liability company is a legal entity separate and distinct from its members (*see* Limited Liability Company Law § 203 [d]; *Michael Reilly Design, Inc. v Houraney*, 40 AD3d 592, 593 [2007]), and it is deemed to be a "person" (Limited Liability Company Law § 102 [w]). Indeed, defendant concedes that it is a "person" within the meaning of Penal Law § 10.00 (7), which defines the term as including, where appropriate, "an unincorporated association."

Contrary to defendant's argument, such an unincorporated association may be convicted of an intentional crime committed by its employees or agents, under certain circumstances (*see People v Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, 250 AD2d 207, 212-214 [1998], *lv denied* 93 NY2d 877, 1023 [1999], *cert denied* 528 US 1081 [2000]; *People v Lessoff &*

*Berger*, 159 Misc 2d 1096, 1097-1098 [1994]; *People v Smithtown Gen. Hosp.*, 92 Misc 2d 144, 147-148 [1977]; *see also United States v A & P Trucking Co.*, 358 US 121, 124-126 [1958]). We note that the United States Supreme Court has held that "with regard to corporations *and other associations*[,] . . . it is elementary that such impersonal entities can be guilty of 'knowing' or 'willful' violations of regulatory statutes through the doctrine of responde[a]t superior" (*United States v A & P Trucking Co.*, 358 US at 125 [emphasis added]; *see New York Central & Hudson River R. Co. v United States*, 212 US 481, 492-496 [1909]). As the Court explained, "[t]he treasury of the business may not with impunity obtain the fruits of violations which are committed knowingly by agents of the entity in the scope of their employment" (*United States v A & P Trucking Co.*, 358 US at 126).

A similar rule has long prevailed in New York, predating the enactment of Penal Law § 20.20. Specifically, the long-standing rule as set forth by the Court of Appeals was that a corporation could be held liable for the intentional acts of its agents that are either (1) in "violat[ion] [of] positive prohibitions or commands of statutes regarding corporate acts" (*People v Canadian Fur Trappers Corp.*, 248 NY 159, 163 [1928]), (2) "authoriz[ed] through action of its officers or which [are] done with the acquiescence of its officers" (*id.* at 164),[2] or (3) performed on behalf of the corporation if undertaken "within the scope of [the agents'] authority, real or apparent" (*People v Rochester Ry. & Light Co.*, 195 NY 102, 105 [1909]). These three alternative grounds for corporate criminal liability are now codified in Penal Law § 20.20 (2), and the parties are in agreement that they form the basis for the legal theory underlying the indictment in this case. We emphasize that the three grounds do not represent a departure from the courts' traditional reluctance to employ the doctrine of vicarious liability in criminal prosecutions because corporations, like limited liability companies, "are legal fictions [that] can operate only through their designated agents and employees[;] the acts of the latter are, in a sense, the acts of the corporation as well" (*People v Byrne*, 77 NY2d 460, 465 [1991]). Unlike the imputation of the conduct of one natural

---

2. Acquiescence or authorization may be demonstrated by a showing that "the wrongful acts attributed to the employees and agents of the defendant were performed in its service so methodically and continuously as to indicate the sanction of the corporation" (*People v Canadian Fur Trappers Corp.*, 248 NY at 164 [internal quotation marks omitted]).

person to another, the corporation "is, in reality, being made to answer for its *own* acts. Such a theory of liability is a far cry from one involving *true* vicarious liability" (*id.* at 466; *see People ex rel. Price v Sheffield Farms-Slawson-Decker Co.*, 225 NY 25, 30 [1918]; *cf. People v Leonard*, 8 NY2d 60, 62 [1960]).

In our view, although Penal Law § 20.20 is inapplicable here because defendant is not a corporation, the long-standing analogous principles that have evolved through case law remain dispositive (*see People v Lessoff & Berger*, 159 Misc 2d at 1098; *see also People v Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, 250 AD2d at 212-213; *People v Smithtown Gen. Hosp.*, 92 Misc 2d at 146-147). Again, Penal Law § 10.00 (7) defines a "person" as including unincorporated associations where appropriate, and the charged crimes apply to any "person" who commits them, without limitation (*see* Public Health Law § 12-b [2]; Penal Law § 175.05 [1]). Moreover, like a hospital, "[t]he operation of a [nursing home] is so intertwined with the public interest as to legally justify the imposition of extensive controls by all levels of government" (*People v Smithtown Gen. Hosp.*, 92 Misc 2d at 147). Accordingly, given the important public interest at issue and the regulatory nature of the crimes committed by defendant's employees, we agree with the People that there is no rational basis to exempt defendant from criminal liability under these circumstances, when a corporate nursing home operator would be held accountable (*see United States v A & P Trucking Co.*, 358 US at 124; *People v Canadian Fur Trappers Corp.*, 248 NY at 162-163). Nor can it be said that County Court's jury instructions, which largely tracked the language set forth in Penal Law § 20.20 and the case law codified in that section, misled the jury (*see People v Maher*, 89 NY2d 456, 464 [1997]).

■ Finally, there is no merit to defendant's argument that County Court erred in admitting statements of deficiency prepared by the Department of Health that contained patient complaints. Defendant asserts that the complaints constitute hearsay. These documents, however, were offered not for the truth of the patient complaints, but to show that defendant had notice that its employees were consistently failing to provide required care. As such, they do not constitute hearsay (*see Papa v Sarnataro*, 17 AD3d 430, 432 [2005]). In any event, as County Court concluded, the statements of deficiency are Department of Health reports on questions of fact pertaining to health law violations and, thus, are "presumptive evidence of the facts so

stated therein, and shall be received as such in all courts" (Public Health Law § 10 [2]; *see Maldonado v Cotter*, 256 AD2d 1073, 1075 [1998]).

CARDONA, P.J., SPAIN, KAVANAGH and GARRY, JJ., concur.

Ordered that the judgment is affirmed.