ALDEN et al., Appellants,

v.

SUMMIT COUNTY, Appellee.

[Cite as *Alden v. Summit Cty.* (1996), 112 Ohio App.3d 460.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17458.

Decided July 10, 1996.

*Robert Hunt,* for appellants.

*Maureen O'Connor,* Summit County Prosecuting Attorney, and *Jason T. Adams,* Assistant Prosecuting Attorney, for appellee.

REECE, Judge.

Plaintiffs, Robert and Joanne Alden, appeal the Summit County Court of Common Pleas' grant of summary judgment in favor of defendant, Summit County. We affirm.

## I

Robert and Joanne Alden own and reside on thirty-four acres of land in Summit County which is located in the former village of Northampton. A watercourse known as Mud Brook flows through the property. In close proximity to Mud Brook is the Mud Brook Sewer System operated by Summit County. The county began operating the sewer system in 1969. The sewer system intakes sewage from the cities of Stow, Silver Lake, Cuyahoga Falls, Monroe Falls and Tallmadge and carries it to a waste treatment plant. The sewer system also has an apparatus known as a bar screen attached to it. The bar screen is a

device created to handle overflows in the sewer system by releasing overflowing sewage through a bypass door. This bar screen faces Mud Brook and allows overflowing sewage to escape through the bypass door and into Mud Brook.

Since the beginning of its operation, the sewer system has periodically overflowed. The cause of the overflow has been storm water rushing through the sewer system after heavy rains. The overflowing sewage and storm water have drained directly into Mud Brook. This overflow has deposited into Mud Brook and onto the Aldens' land the attendant components of sewage: hypodermic needles, used condoms, sanitary napkins, and fecal material. This waste has polluted a portion of the Aldens' land, rendering it unusable by them.

Fed up with the pollution, the Aldens sued the county for various violations including statutory infractions, constructive trespass, nuisance and negligent maintenance and repair of the sewer system. The county moved for summary judgment. It argued that it possessed sovereign immunity against the lawsuit because designing the sewer system with the bar screen and with its current line capacity constituted a governmental function. The county also argued that the "public duty" doctrine barred the lawsuit because the act of providing a sewer system was for the benefit of the public as a whole and because the county did not assume a special duty toward the Aldens. The Aldens opposed the motion for summary judgment. They argued that the negligent maintenance of the sewer system caused the pollution, and because maintenance was a proprietary function, the county was liable for its negligent acts. Moreover, the Aldens argued that because the county's actions violated several statutes, the county committed negligence *per se.* The trial court granted summary judgment in favor of the county based on the arguments it raised. The Aldens now appeal, raising two assignments of error.

## II

In their first assignment of error, the Aldens argue that the trial court incorrectly found the public duty doctrine applicable where a specific, nondiscretionary duty was imposed upon the county as a matter of law. In their second assignment of error, the Aldens argue that the trial court mistakenly found that the doctrine of sovereign immunity applied to the lawsuit. Because both of these assignments of error involve the trial court's grant of summary judgment, this court applies the same standard of review to each of them. When reviewing the grant of summary judgment pursuant to Civ.R. 56(C), an appellate court applies the same standard as the trial court: whether any genuine issues of material fact existed and whether the moving party was entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123.

A

In their second assignment of error, the Aldens argue that the trial court incorrectly applied the doctrine of sovereign immunity to their lawsuit. They contend that the maintenance and repair of the sewer system, and specifically the bar screen, is a proprietary function. The Aldens assert that "[i]t may be argued that the means, method, and manner of correcting the bar screen overflow problem are matters involving judgment and discretion of [*sic*] the part of the county. * * * The problem, however, is the twenty-six-year failure to do *anything*. This continuing, persistent omission in the face of the clear and unambiguous duty to act is the essence of the [county's] negligence." Therefore, the county was not immune from suit.

██ R.C. 2744.02(A) grants immunity from tort liability to political subdivisions for governmental functions unless the facts of a claim come under one of the five exceptions contained in R.C. 2744.02(B). Only if the facts conform to one of those five exceptions is the political subdivision vulnerable to liability. *Miller v. Wadsworth City Schools* (1994), 93 Ohio App.3d 278, 280, 638 N.E.2d 166, 167. A governmental function includes the "provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system[.]" R.C. 2744.01(C)(2)(*l*). Thus, a political subdivision can incur liability only for its failure to exercise reasonable care to keep the sewer system maintained and repaired. *Nice v. Marysville* (1992), 82 Ohio App.3d 109, 117, 611 N.E.2d 468, 473; R.C. 2744.01(G)(2)(d).

██ In its motion for summary judgment, the county filed the affidavit of Jeffrey Lintern, an environmental engineer and director of environmental services for Summit County. In his affidavit Lintern stated that the sewer system was designed to include the bar screen and bypass line. The reason for this was to prevent the main sewer line from clogging by releasing excess rainwater and sewage, which in turn would prevent backups into residential basements and out of manhole covers. Furthermore, Lintern stated that the overflows occur due to severe rain storms and that these overflows occur even though the county routinely inspects and cleans the sewer system. Lastly, Lintern stated that the original design of the sewer system contained a flaw in the calculations as to how much water could pass through the system per day. He said that the original calculations anticipated a flow rate of twenty-one to twenty-seven million gallons per day. In actuality, only fourteen to fifteen million gallons per day can pass through.

In response to the county's motion for summary judgment, the Aldens argued that the county had negligently maintained the sewer system. The Aldens relied on the affidavit of Robert Alden, documentary evidence, pictures of the sewer

system, and Lintern's deposition testimony. However, none of this evidence rebutted the assertion that the sewer system was designed to include the bar screen and bypass to provide access for overflows. The fact that the county designed the sewer system with the bar screen and bypass as part of the system, with the intent to allow water and sewage to escape onto land, supports the determination that this decision was exercised as part of the county's governmental function. It is apparent that the sewer system needs this type of mechanism to accommodate the overflow. The decision to have the bar screen and bypass and place it near Mud Brook was committed to the governmental, and thus discretionary, function of the county.

Moreover, concerning the Aldens' claim of negligence, the trial court found that:

"Plaintiffs' affidavits fail to establish that Defendant's maintenance and repair of the bar screen, including Defendant's failure to clean the bar screen as often as twice a week, causes the overflow of sewage."

This court's review of the record leads us to the same determination. The record before us indicates that the condition of Mud Brook is caused by the operation of the bar screen as it was intended to operate. The Aldens have not established how the county's maintenance was negligent, and even if negligent, how this negligence caused the overflows.

Furthermore, we note that the Aldens' claim would not fit any of the enumerated exceptions to sovereign immunity. The most likely exception to apply is contained in R.C. 2744.02(B)(3), which states:

"[P]olitical subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *."

The Aldens have alleged that the county failed to keep the sewer system free from nuisance by allowing the overflow to escape into Mud Brook. However, R.C. 2744.02(B)(3) does not carve out an exception for sewer systems. The statutory construction principle of *expressio unius est exclusio alterius* dictates that the expression of one or more items of a class implies that those not identified are to be excluded. *Stow v. Summit Cty.* (1990), 70 Ohio App.3d 298, 300, 590 N.E.2d 1363, 1364. The statute's failure to include a sewer system as posing potential liability for failing to keep it free from nuisance thus prevents a plaintiff from relying on this particular statutory exception to sovereign immunity.

This court does recognize that R.C. 6111.04 mandates that "[n]o person shall cause pollution or place or cause to be placed any sewage, industrial waste, or

other wastes in a location where they cause pollution of any waters of the state[.]" "Person" does include political subdivisions. R.C. 6111.01(I). "Waters of the state" would include Mud Brook pursuant to R.C. 6111.01(H). R.C. 6111.04, however, is not listed as one of the exceptions to sovereign immunity contained in R.C. 2744.02(B). As this court has determined, a political subdivision can become vulnerable to potential liability only if one of the criteria of R.C. 2744.02(B) has been met. *Miller*, 93 Ohio App.3d at 280, 638 N.E.2d at 167. Inasmuch as R.C. 6111.04 does not fit an exception to the sovereign immunity statute, the Aldens cannot avail themselves of it as a way to obtain monetary damages from the county.

Therefore, the trial court properly granted summary judgment as to the issues raised by the Aldens' second assignment of error.

### B

In their first assignment of error, the Aldens contend that the trial court incorrectly applied the public duty rule. They argue that the rule should not apply because R.C. 6111.04 imposes a specific, nondiscretionary duty upon the county not to pollute Mud Brook.

Inasmuch as we have already determined that the Aldens cannot maintain their lawsuit for monetary damages against the county for violations of this statute, there is no need to rule on this assignment of error.

### III

The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.