This is an appeal from a Lawrence County Common Pleas Court summary judgment entered in favor of Arthur and Gladys Breeding, and the Lawrence County Commissioners, defendants below and appellees herein.
Garland and Lelia June Ferguson, plaintiffs below and appellants herein, raise the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE COURT BELOW ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT[S] —
 APPELLEES ARTHUR BREEDING AND GLADYS BREEDING, AGAINST THE PLAINTIFF[S]-APPELLANTS GARLAND M. FERGUSON AND LELIA JUNE FERGUSON, WHERE GENUINE ISSUES OF MATERIAL FACT EXISTED AS TO THE CONDUCT OF THE BREEDINGS AND THE RESULTANT EFFECT THEREOF ON THE OVERFLOW OF WATER ONTO THE FERGUSON PROPERTY."
SECOND ASSIGNMENT OF ERROR:
 "THE COURT BELOW ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT-APPELLEE LAWRENCE COUNTY COMMISSIONERS, AGAINST THE PLAINTIFF[S]-APPELLANTS GARLAND M. FERGUSON AND LELIA JUNE FERGUSON, WHERE GENUINE ISSUES OF MATERIAL FACT EXISTED AS TO THE CONDUCT OF THE COMMISSIONERS AND THE RESULTANT EFFECT THEREOF ON THE OVERFLOW OF WATER ONTO THE FERGUSON PROPERTY."
Our review of the record reveals the following facts pertinent to the instant appeal. Appellants reside at 4944 County Road 15, directly across the street from the Breedings. A drainage ditch that runs parallel to the roadway sits on the Breedings' property.
In 1981, as a result of damage to the Fergusons' property, the Fergusons entered into an agreement with the Lawrence County Commissioners. In the agreement, the Fergusons relieved the County of past and future liability for damage caused by overflowing water from the drainage ditch, provided that the ditch was cleaned, new pipe was installed, and the ditch was properly maintained. Pursuant to the agreement, the County installed a new culvert under the Breedings' driveway and dug a deeper drainage ditch.
After continuing to experience problems with overflowing water, the Fergusons, in 1994, contacted the Lawrence County Engineer's Office. The Fergusons requested the county to dig a deeper ditch on the Breedings' property to remedy the overflow. The county determined, however, that a deeper drainage ditch would not solve the problem. David Lynd, the Lawrence County Engineer, explained that the drainage culvert was encased in cement and had a maximum per minute flow capacity. Lynd stated that he advised the Fergusons "that the best solution to [the overflow problem] would be to install a 12-inch culvert and drainage system on the front of [the Fergusons] property which would catch any overflow from [the] Breedings' property." Lynd further stated that he explained to the Fergusons that the Fergusons' home was built below the road level, which caused the overflow problem. Lynd thus stated that "even normal runoff has the possibility of flooding [the Fergusons'] property."
On August 18, 1998, appellants filed a complaint against appellees. In their complaint, appellants alleged that the Breedings negligently maintained the drainage ditch and refused to allow the county to install a sufficient culvert to permit surface water to be diverted. Appellants also asserted that the county has failed to properly maintain the ditch.
On May 13, 1999, the Breedings filed a motion for summary judgment. The Breedings argued that they owed no duty to appellants. The Breedings contended that they always have properly maintained the ditch and never interfered with the flow of the surface water.
On June 21, 1999, the Lawrence County Commissioners filed a motion for summary judgment. The county asserted that it had inspected the ditch and found the ditch to be properly maintained. The county further argued that inasmuch as the alleged problem with the overflow related to a design issue, the county was immune from suit under Ohio's Political Subdivision Tort Liability Act, R.C. Chapter 2744.
Appellants filed a memorandum contra, arguing as follows:
 "The plaintiffs have alleged that the actions of the County in failing to cut the ditch in front of the Breedings' property (at the request of the Breedings) resulted in a reduction of the volume of water that the ditch was able to carry. They have further alleged that the culvert beneath the Breedings' driveway is inadequate to handle the flow of water and improperly maintained.
 It seems clear that these are issues of fact to be determined by the jury."
On August 3, 1999, appellants filed a supplemental affidavit. In the affidavit, Mr. Ferguson stated that: (1) the county has never cleaned or otherwise maintained the ditch; (2) Mr. Breeding sent a county dump truck and backhoe away; and (3) the county advised the Fergusons that a new culvert should be installed under the Breedings' driveway to better accommodate the flow of water.
On August 6, 1999, the trial court granted appellees' motions for summary judgment. The trial court determined that the county was immune from liability pursuant to R.C. 2744.03 for damages resulting from design and construction decisions. Moreover, the trial court concluded that appellants failed to present any evidence that the Breedings failed to comply with the "reasonable use rule. Appellants filed a timely notice of appeal.
In their first assignment of error, appellants argue that the trial court erred by granting summary judgment in the Breedings' favor. In their second assignment of error, appellants argue that the trial court erred by granting summary judgment in the Commissioners' favor. Because appellant's two assignments of error both address the propriety of the trial court's decision granting appellees' summary judgment, we consider the two assignments of error together.
Initially, we note that when reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review. Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157; Moreheadv. Conley (1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786,788. Thus, in determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56 (C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Consequently, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g. Vahila v. Hall (1997),77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164, 1171.
Pursuant to Civ.R. 56, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a material fact. Vahila, Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273. The moving party cannot discharge its initial burden under the rule with a conclusory assertion that the nonmoving party has no evidence to prove its case. Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134,147, 677 N.E.2d 308, 318; Dresher, supra. Rather, the moving party must specifically refer to the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56 (C); Dresher, supra.
 "[U]nless a movant meets its initial burden of establishing that the nonmovant has either a complete lack of evidence or has an insufficient showing of evidence to establish the existence of an essential element of its case upon which the nonmovant will have the burden of proof at trial, a trial court shall not grant a summary judgment."
Pennsylvania Lumbermans Ins. Corp. v. Landmark Elec., Inc.
(1996), 110 Ohio App.3d 732, 742, 675 N.E.2d 65, 72-73. Once the moving party satisfies its burden, the nonmoving party bears a corresponding duty to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56 (E); Dresher, supra.
In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings."Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66, 375 N.E.2d 46, 47. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56 (E) provides:
 * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
Thus, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56 (C), that a genuine issue of material fact remains for trial.
A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue of material fact remains to be determined. Dresher, supra; Jackson v. Alert Fire SafetyEquip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.
The substantive law determines whether a genuine issue of material fact remains. Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202; Turnerv. Turner (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, 1126;Perez v. Scrips — Howard Broadcasting Co. (1988), 35 Ohio St.3d 215,218-19, 520 N.E.2d 198, 202. As the court stated inAnderson, supra:
 "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."
In the case at bar, we agree with the trial court that no genuine issues of material fact remain for resolution at trial.
 A APPELLANTS' CLAIM AGAINST THE BREEDINGS
In McGlashan v. Spade Rockledge Terrace Condo Dev. Corp.
(1980), 62 Ohio St.2d 55, 402 N.E.2d 1196, the court adopted a reasonable use rule that should be applied when resolving surface water disputes between land owners. The court stated:
 "In resolving surface water disputes, courts of this state will apply a reasonable use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable."
Id., at syllabus.
In Heiner v. Kelley (July 23, 1999), Washington App. No. 98 CA 7, unreported, we further discussed the rule regarding land owner liability for interference with surface water as follows:
 "Liability for unreasonable interference of surface water arises through: (1) an act; or (2) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference. 4 Restatement of the Law 2d, Torts (1965) 118, Section 824. One who undertakes to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if: (1) his failure to exercise such care increases the risk of such harm, or (2) the harm is suffered because of the other's reliance upon the undertaking. Id."
In the case at bar, simply no evidence exists that the Breedings possessed a duty to have a deeper ditch installed upon their property in an attempt to alleviate the flow of water onto appellants' property. The county engineer stated that a deeper ditch would not have solved the problem. Rather, the county engineer stated that the drainage problem emanates from the design of the drainage system, specifically a culvert of inadequate diameter. Additionally, no evidence exists that the Breedings interfered, in any way, with the flow of surface water.
Appellants' self-serving statements that the county advised him that a new culvert needed to be installed under the Breedings' driveway do not sufficiently demonstrate the existence of a genuine issue of material fact. We note that a proper Civ.R. 56 (E) affidavit must be made on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. Inadmissible hearsay evidence in an affidavit is entitled to no weight. See Wall v. FirelandsRadioloqy. Inc. (1996), 106 Ohio App.3d 313, 666 N.E.2d 235; Rickv. Johnson (Aug. 26, 1993), Cuyahoga App. No. 63648, unreported. Appellants' statements regarding what the county may have told him constitute inadmissible hearsay and, thus, are entitled to no weight.
Consequently, we agree with the trial court's conclusion that no genuine issues of material fact remain for trial regarding the Breedings' liability to appellants for damage to appellants' property.
 B APPELLANTS' CLAIM AGAINST THE COUNTY
R.C. Chapter 2744, the Political Subdivision Tort Liability Act, absolves political subdivisions of tort liability, subject to certain exceptions. See Franks v. Lopez (1994), 69 Ohio St.3d 345,347, 632 N.E.2d 502, 504; see, also, Helton v. Scioto Ed.Cty. Commrs. (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841,843. Whether a political subdivision is entitled to statutory immunity under Chapter 2744 presents a question of law for the court's determination. Conley v. Shearer (1992), 64 Ohio St.3d 284,292, 595 N.E.2d 862, 869; see, also, Feitshans v. Darke Cty.
(1996), 116 Ohio App.3d 14, 19, 686 N.E.2d 536, 539.
R.C. 2744.02 (A) (1)[1] sets forth the general rule that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
R.C. 2744.02 (B) contains certain exceptions to the general rule of non-liability. If an exception applies, the political subdivision will be liable, unless one of the defenses contained in R.C. 2744.03 "re-absolves" the political subdivision of immunity. See, generally, Hallett v. Stow Bd. of Edn. (1983),89 Ohio App.3d 309, 313, 624 N.E.2d 272, 274; Howell v. The UnionTownship Trustees (Mar. 18, 1997), Scioto App. No. 96 CA 2430, unreported.
R.C. 2744.03 specifies certain defenses a political subdivision may assert to defeat a claim that it is liable under one of the R.C. 2744.02 (B) exceptions. Relevant to the case at bar, R.C. 2744.03 (A) provides:
 In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
* * * *
 (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
* * * *
 (5) The political subdivision is immune from liability if the injury, death or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
The R.C. 2744.03 (A) defenses become an issue only after the court has determined that one of the R.C. 2744.02 (B) exceptions to the general rule of non-liability applies. See Feitshans,116 Ohio App.3d at 22, 686 N.E.2d at 541 (stating that "the defenses set forth in R.C. 2744.03 are only relevant where the plaintiff demonstrates that the governmental function at issue comes under a specific exception to general immunity") (citing Miller v.Wadsworth (1994), 93 Ohio App.3d 278,638 N.E.2d 166; Howe v. Jackson Twp. Bd. of Trustees
(1990), 67 Ohio App.3d 159, 163, 586 N.E.2d 217,220, jurisdictional motion overruled (1990), 53 Ohio St.3d 717,560 N.E.2d 779; Shank v. Springfield
(May 3, 1995), Clark Co. App. No. 94-CA-71, unreported)).
We note that the design and construction of a storm water runoff system constitutes a "governmental function" for which a political subdivision is statutorily immune from liability. SeeSmith v. Cincinnati Storm water Mgt. Div. (1996), 111 Ohio App.3d 502,676 N.E.2d 609; Alden v. Summit Cty. (1996), 112 Ohio App.3d 460,464, 679 N.E.2d 36; Sparks v. Erie Ctv. Bd. of Cty.Commissioners (Jan. 16, 1998), Erie App. No. E-97-007, unreported, (stating that under R.C. 2744.02 (A) (1), a political subdivision is immune from liability for design decisions including "the original capacity of the system to handle sewage along with increased storm runoff"); Zimmerman v. Summit Cty.
(Jan. 15, 1997), Summit App. No. C.A. 17610 (holding that the political subdivision was immune from liability when the plaintiff's injuries resulted from the political subdivision's original design and construction of the sewer system, which would require extensive redesigning and reconstructing of the system)
In the case sub judice, based upon the foregoing authorities and after reviewing the record, we agree with the trial court's conclusion that the county is immune from liability. As stated above, a political subdivision is not liable for damages resulting from the design of a water drainage system.
Appellants contend, however, that they presented evidence demonstrating that a genuine issue of material fact remains as to whether the county properly maintained the ditch, for which the county may be held liable. Appellants note that they submitted an affidavit in which Mr. Ferguson averred that the county has not cleaned or maintained the ditch. We do not believe that appellants' self-serving affidavit, standing alone, sufficiently establishes the existence of a genuine issue of material fact. Rather, we agree with the court's discussion of the issue in BankOne, N.A. v. Burkey (June 14, 2000), Lorain App. NO. 99 CA 7359, unreported:
 "A party's unsupported and self-serving assertions offered to demonstrate issues of fact, standing alone and without corroborating materials contemplated by Civ.R. 56, are simply insufficient [to overcome a properly supported motion for summary judgment]. See, e.g., Huffman v. Timken Co. (Nov. 7, 1990), Wayne App. No. 2560, unreported. In other words, when the moving party puts forth evidence tending to show that there are no genuine issues of material fact, the nonmoving party may not avoid summary judgment solely by submitting a self-serving affidavit containing no more than bald contradictions of the evidence offered by the moving party. To conclude otherwise would enable the nonmoving party to avoid summary judgment in every case, crippling the use of Civ.R. 56 as a means to facilitate "the early assessment of the merits of claims, pre-trial dismissal of meritless claims, and defining and narrowing issues for trial." Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, 170, 677 N.E.2d 308 (Cook, J., concurring in part and dissenting in part)."
Appellants' assertions that the failure to maintain the ditch resulted in the overflow constitute nothing more than conclusory allegations, which are insufficient to overcome a properly supported summary judgment motion. See Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52,567 N.E.2d 1027, 1032 (stating that ""there should be no doubt that resting on mere allegations against a motion for summary judgment and eschewing the mandate of Civ.R. 56 (E) is insufficient'") (quoting King v. K.R. Wilson Co. (1983), 8 Ohio St.3d 9, 11,455 N.E.2d 1282, 1283)). Appellants fail to point to any specific evidence demonstrating a genuine issue of material fact as to whether the county's alleged failure to properly maintain the ditch resulted in the overflow problem. We again note that the evidence reveals that the drainage problems emanates from the design of the drainage system, specifically a culvert of inadequate diameter.
Assuming, arguendo, that appellants' affidavit sufficiently raises an issue as to whether the county failed to maintain the ditch, we note that no evidence exists that the failure to maintain the ditch caused the water damage on appellants' property. In fact, the evidence submitted in the case at bar indicates that the cause of the overflow problem resulted from appellants' home being built below the level of the road.
Accordingly, based upon the foregoing reasons, we overrule appellants' first and second assignments of error and affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellees recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Evans, J.: Concur in Judgment Opinion For the Court
_____________________________ Peter B. Abele, Judge
[1] We note that the Ohio General Assembly, in recent years, has twice amended the Political Subdivision Tort Liability Act. See H.B. No. 350 (Jan. 1, 1997); I-LB. No. 215 (June 30, 1997). In 1999, the Ohio Supreme Court declared H.B. 350 unconstitutional. See State ex rel. Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062. We therefore refer to the statutes as they existed prior to H.B. 350.